# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LHB INSURANCE BROKERAGE INC., On Behalf Of Itself And All Others Similarly Situated, | Civil Action No. 08-CV-3095 (LTS) |
| Plaintiff, | |
| vs. | |
| CITIGROUP INC. and CITIGROUP GLOBAL MARKETS, INC., | |
| Defendants. | |

*[additional captions follow]*

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF WEDGEWOOD TACOMA LLC AND JEMSTONE LLC FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF SELECTION OF LEAD COUNSEL**

**MILBERG LLP**
Jerome M. Congress (JC-2060)
Kent A. Bronson (KB-4906)
One Pennsylvania Plaza, 49th Floor
New York, New York 10119
Telephone:    (212) 594-5300
Facsimile:    (212) 868-1229
jcongress@milberg.com
kbronson@milberg.com

*Proposed Lead Counsel for the Class*

| | |
|---|---|
| LISA SWANSON, Individually And On Behalf of All Others Similarly Situated, | Civil Action No. 08-CV-3139 (LTS) |
| Plaintiff, | |
| vs. | |
| CITIGROUP INC., CITIGROUP GLOBAL MARKETS, INC. AND CITI SMITH BARNEY, | |
| Defendants. | |
| SAMUEL A. STOCKHAMER and ALICE L. STOCKHAMER, On Behalf of Themselves and All Others Similarly Situated, | Civil Action No. 08-CV-3904 (LTS) |
| Plaintiffs, | |
| vs. | |
| CITIGROUP INC. and CITIGROUP GLOBAL CAPITAL MARKETS, INC. | |
| Defendants. | |
| WEDGEWOOD TACOMA LLC, Individually And On Behalf of All Others Similarly Situated, | Civil Action No. 08-CV-4360 (LTS) |
| Plaintiff, | |
| vs. | |
| CITIGROUP INC., CITIGROUP GLOBAL MARKETS, INC., and CITI SMITH BARNEY, | |
| Defendants. | |

435972_1

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................................1

INTRODUCTION ......................................................................................................................2

ARGUMENT ..............................................................................................................................5

     I.     THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES ..........5

     II.     MOVANTS SHOULD BE APPOINTED LEAD PLAINTIFFS ...........................5

          A.     THE REQUIREMENTS OF THE PSLRA..................................................6

          B.     MOVANTS SATISFY THE LEAD PLAINTIFF REQUIREMENTS
                 OF THE PSLRA .........................................................................................7

               1.     Movants Complied With The PSLRA, Are The Most Adequate
                      Plaintiffs Under the PSLRA, And Should Be Appointed Lead
                      Plaintiffs.......................................................................................7

               2.     Movants Have the Requisite Financial Interest in the Relief
                      Sought by the Class........................................................................8

               3.     Movants Otherwise Satisfy Rule 23 ...............................................9

     III.     THE COURT SHOULD APPROVE MOVANTS' CHOICE OF MILBERG
           AS LEAD COUNSEL OF THE SECURITIES ACTIONS PURSUANT TO
           THE PSLRA AND AS INTERIM LEAD COUNSEL OF THE IAA CLAIMS
           UNDER RULE 23 ...............................................................................................12

          A.     Milberg Satisfies the Requirements Of the PSLRA ..................................12

          B.     Milberg Satisfies the Requirements of Rule 23(g) ...................................13

CONCLUSION...........................................................................................................................16

# TABLE OF AUTHORITIES

## FEDERAL CASES

*In re Air Cargo Shipping Services Antitrust Litigation*,
  240 F.R.D. 56 (E.D.N.Y. 2006) ..............................................................................13

*Appleyard v. Wallace*,
  754 F.2d 955 (11th Cir. 1985) ...............................................................................10

*Babcock v. Computer Associates International*,
  212 F.R.D. 126 (E.D.N.Y. 2003) ....................................................................10, 11

*In re Cavanaugh*,
  306 F.3d 726 (9th Cir. 2002) ........................................................................7, 8, 12

*In re Cendant Corp. Litigation*,
  264 F.3d 201 (3d Cir. 2001) ....................................................................................8

*Fischler v. Amsouth Bancorporation*,
  No. 96-1567-CIV-T-17A, 1997 U.S. Dist. LEXIS 2875 (M.D. Fla. Feb. 6, 1997) .................9

*In re GMC Pick-Up Truck Fuel Tank Products Liability Litigation*,
  55 F.3d 768 (3d Cir. 1995) ....................................................................................11

*Greebel v. FTP Software, Inc.*,
  939 F. Supp. 57 (D. Mass. 1996) .............................................................................6

*Johnson v. Celotex Corp.*,
  899 F.2d 1281 (2d Cir. 1990) ..................................................................................5

*Kennedy v. Tallant*,
  710 F.2d 711 (11th Cir. 1983) ...............................................................................10

*Kirkpatrick v. J. C. Bradford & Co.*,
  827 F.2d 718 (11th Cir. 1987) ...............................................................................11

*Lax v. First Merchandises Acceptance Corp.*,
  No. 97-C-2715, 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) ......................6, 9, 12

*Philips v. Joint Legislative Committee on Performance & Expenditure Review*,
  637 F.2d 1014 (5th Cir. 1981) ...............................................................................10

*Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. LaBranche & Co.*,
  229 F.R.D. 395 (S.D.N.Y. 2004) ...................................................................7, 9, 10

*Priest v. Zayre Corp.*,
  118 F.R.D. 552 (D. Mass. 1988) .............................................................................10

*Rossini v. Ogilvy & Mather, Inc.*,
    798 F.2d 590 (2d Cir. 1986) ......................................................................10

## DOCKETED CASES

*In re Biovail Corp. Securities Litigation*,
    No. 03-cv-8917-GEL (S.D.N.Y. filed Nov. 12, 2003) ...........................15

*Green v. CMS Energy Corp.*,
    No. 02-CV-72004 (E.D. Mich. filed May 17, 2002) ..............................15

*LHB Insurance Brokerage Inc. v. Citigroup Inc.*,
    No. 1:08-CV-3095 (S.D.N.Y. filed Mar. 26, 2008)..................................2

*In re Nortel Networks Corp. Securities Litigation*,
    No. 01-CV-1855 (S.D.N.Y. filed Mar. 2, 2001)..............................15, 16

*In re Sears, Roebuck & Co. Securities Litigation*,
    No. 02-CV-7527 (N.D. Ill. filed Oct. 18, 2002) ...................................15

*Simon v. KPMG LLP*,
    No. 05-CV-03189 (D.N.J. filed June 24, 2005)...................................15

*Stockhamer v. Citigroup Inc*,
    No. 1:08-CV-3904 (S.D.N.Y. filed Apr. 25,2008) ..................................2

*Swanson v. Citigroup Inc.*,
    No. 1:08-CV-3139 (S.D.N.Y. filed Mar. 27, 2008)..................................2

*In re Tyco Securities Litigation*,
    No. 02-md-01335 (D.N.H. filed Aug. 23, 2002) ..................................16

*Wedgewood Tacoma LLC v. Citigroup Inc.*,
    No. 1:08-CV-4360 (S.D.N.Y. filed May 8, 2008)....................................2

## FEDERAL STATUTES

15 U.S.C. § 78u-4(a)(1) ....................................................................................6

15 U.S.C. § 78u-4(a)(2)(A) ..............................................................................4

15 U.S.C. § 78u-4(a)(3)(A) and (B)...............................................................6, 7

15 U.S.C. § 78u-4(a)(3)(A)(i) ...........................................................................6

15 U.S.C. § 78u-4(a)(3)(B) ..................................................................... *passim*

15 U.S.C. § 78u-4(a)(3)(B)(i) ...........................................................................6

15 U.S.C. § 78u-4(a)(3)(B)(iii) .................................................................................7, 8

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) ...............................................................12

15 U.S.C. § 78u-4(a)(3)(B)(v) .............................................................................12

15 U.S.C. § 78j(b) ..................................................................................................2

15 U.S.C. § 78t(a) ..................................................................................................2

15 U.S.C. § 80b-1 ..................................................................................................1

17 C.F.R. § 240.10b-5 ...........................................................................................2

Fed. R. Civ. P. 23 ..........................................................................................2, 5, 6

Fed. R. Civ. P. 23(a) ........................................................................................9, 10

Fed. R. Civ. P. 23(g) ..................................................................................... *passim*

Fed. R. Civ. P. 42(a) ..............................................................................................5

## MISCELLANEOUS

Manual for Complex Litigation § 10.22 (4th ed. 2004)....................................13

Manual for Complex Litigation § 10.221 (4th ed. 2004)..................................13

## PRELIMINARY STATEMENT

Class members Wedgwood Tacoma LLC and Jemstone LLC ("Movants") respectfully submit this Memorandum of Law in support of their motion for an order: (i) consolidating the above-captioned actions; (ii) appointing Movants as Lead Plaintiffs pursuant to Section 21D of the Securities Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B), as amended by the PSLRA (the "PSLRA") with respect to all claims brought under the Securities Exchange Act of 1934 (the "Exchange Act Claims"); (iii) approving Movants' selection of Milberg LLP ("Milberg") as Lead Counsel pursuant to the PSLRA with respect to the Exchange Act Claims; (iv) approving Movants' selection of Milberg as Interim Lead Counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure with respect to all claims brought under the Investment Advisors Act, 15 U.S.C. § 80b-1; and (v) granting such other and further relief as the Court may deem just and proper.

Movants acquired a total of $3.9 million of auction rate securities (sometimes referred to using the acronym "ARS") during the Class Period, approximately $3.775 million of which they continue to hold.[1] *See* Declaration of Jerome M. Congress in Support of the Motion of Wedgewood Tacoma LLC and Jemstone LLC for Consolidation, Appointment as Lead Plaintiffs and Approval of Selection of Lead Counsel (the "Congress Decl.") Ex. A.  The ARS were falsely marketed as highly liquid, cash equivalents, but the ARS have been illiquid since February 13, 2008 as a result of the manifestation of risks previously concealed by Citigroup from Movants and the Class.

---

[1] Jemstone LLC has been informed that approximately $ 1.5 million of its ARS will be redeemed in the near future.  *See* Congress Decl. Ex. A, Jemstone LLC Schedule A.  If this occurs, and if the amount paid in the redemptions is the full face amount of Jemstone's ARS, Movants would still have a financial interest of $2.275 million in the litigation.

435972_1

Because the Movants' ARS holdings are frozen and of uncertain value, their financial interest under the PSLRA is, at a minimum, approximately $3.775 million as of the date of filing this motion. Accordingly, Movants may have the largest financial interest in the outcome of this litigation, and otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. For these reasons, they believe that they are the "most adequate plaintiffs" to lead the litigation and their selection of Lead Counsel should be approved. Movants further submit that appointing the same Lead Counsel for purposes of both the Exchange Act and Investment Advisors Act claims is appropriate because of the overlap of factual issues between these claims. The discovery in all four actions will essentially be the same.

## INTRODUCTION[2]

As of May 27, 2008, four related actions had been filed in this District on behalf of a class of purchasers of ARS held in Citigroup accounts (the "Actions"). All but one of the Actions allege violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder (the Exchange Act Actions") on behalf of a class (the "Class") who purchased or otherwise acquired their Citigroup ARS during the Class Period.[3] *Stockhamer v. Citigroup Inc.*, No. 1:08-CV-3904 (S.D.N.Y. filed Apr. 25, 2008) (LTS) (*Stockhamer*) (class period: April 25, 2002 to the present) asserts

---

[2] The facts set forth here include the facts alleged in the complaints in the Actions as well as information obtained through Movants' counsels' own investigation.

[3] The Exchange Act Actions are *LHB Insurance Brokerage Inc. v. Citigroup Inc.*, No. 1:08-CV-3095 (S.D.N.Y. filed Mar. 26, 2008) (LTS) (*LHB Insurance*) (class period: March 26, 2003 to February 13, 2008); *Swanson v. Citigroup Inc.,* No. 1:08-CV-3139 (S.D.N.Y. filed Mar. 27, 2008) (LTS) (*Swanson*) (class period: March 27, 2003 to February 13, 2008); and *Wedgewood Tacoma LLC  v. Citigroup Inc.*, No. 1:08-CV-4360 (S.D.N.Y. filed May 8, 2008) (LTS) (*Wedgewood*) (class period: May 8, 2003 to February 13, 2008).

violations of 15 U.S.C. § 80b-1 of the Investment Advisors Act of 194, as well as pendent state law claims, on behalf of a class of Citigroup ARS purchasers. *Wedgewood Tacoma LLC* alleges both the securities fraud claims and the IAA claims. The Exchange Act Actions and *Stockhamer* arise from essentially the same facts and circumstances.

All of the Actions allege that Defendants[4] knew, but failed to disclose, material facts while marketing ARS to class members. Defendants falsely represented that these securities were highly liquid cash equivalents, similar to money market funds or certificates of deposit (CDs), and safe investments suitable for short-term investing. As such, the holdings were falsely represented as suitable for risk-averse people and businesses needing ready access to their cash. Defendants falsely marketed ARS as desirable because they earned slightly higher interest rates or dividends over other cash alternatives. Class members were typically promised that they could access their money by liquidating these holdings every 7, 14, 28 or 35 days.

In fact, Defendants knew, but failed to disclose that (a) these securities were not cash equivalents or suitable alternatives to money market funds or CDs; (b) continuing liquidity was highly uncertain because it depended substantially, if not completely, on Defendants' artificial support of ARS auctions and market; (c) in fact no real market for these securities could or would exist as it did, and most if not all of the auctions for these securities would be overwhelmingly, if not completely, doomed to failure, were it not for Defendants' and other broker-dealers' constant and pervasive support and propping up of these auctions by always, or nearly always, serving as buyers of last resort for these securities; and (d) these securities would

---

[4] Defendants include Citigroup Inc., Citigroup Global Markets, Inc., and Citi Smith Barney (collectively referred to as "Defendants" or "Citigroup"). The *LHB Insurance* and *Stockhamer* Actions only name Citigroup Inc. and Citigroup Global Markets, Inc. as Defendants.

(and did) in fact become illiquid as soon as Defendants ceased their routine and pervasive artificial support for the ARS auction market.

On February 13, 2008, the Movants and other class members were devastated by the sudden collapse of the ARS market due to the failure of almost 90% of all auctions caused by Defendants' and other broker-dealers' misconduct.  Over $300 billion in ARS holdings became illiquid because Defendants suddenly refused to support the auction process they devised. Numerous Class members are experiencing life-changing hardship given the inability to tap significant sums of their own money.  In some cases large portions (or all) of their life savings are frozen while in other cases monies urgently needed for such purposes as tax obligations, home purchases and the like are inaccessible.

Movants purchased approximately $3.9 million of ARS from Citigroup during the Class Period, and currently have frozen ARS holdings of $3.775 million that they purchased from Defendants.  Because of the extent of their ARS holdings, the Movants here have a powerful financial incentive to recover the full value of their holdings from Defendants; indeed, they may, together, represent the largest financial interest of any Class member or group of Class members seeking to be appointed Lead Plaintiffs.  In addition, Movants satisfy the requirements of the PSLRA and Rule 23 of the Federal Rules of Civil Procedure.  Movants have each submitted signed certifications demonstrating their desire to serve as Lead Plaintiffs.  *See* Congress Decl., Ex. A.  Thus, Movants are presumptively the most adequate plaintiffs and should be appointed Lead Plaintiffs by the Court in these Actions. [5]

---

[5] The financial interest of Movants in the litigation is not the same as their legally compensable damages, which measurement is often a complex legal question that cannot be determined at this stage of the litigation.  As discussed more fully below, these actions are different from the typical PSLRA action in which plaintiffs' total loss is reflected in the drop in the market price of the

## ARGUMENT

## I.    THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

Consolidation is appropriate where there are actions involving common questions of law or fact.  Fed. R. Civ. P. 42(a).  The Actions each assert class claims on behalf of those who purchased or otherwise acquired ARS that were marketed, sold and/or underwritten by Defendants during the Class Period for alleged violations of the Exchange Act and/or Investment Advisors Act during the Class Periods.  Each case involves the same factual issues, namely, whether plaintiffs purchased or otherwise acquired ARS that were marketed, sold and/or underwritten by Defendants during the Class Periods as a result of their allegedly false and misleading statements.  All but *Stockhamer* involve the legal issues of whether Defendants' conduct violates Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5.  Both *Wedgewood* and *Stockhamer* contain claims under the Investment Advisors Act which rely on the same evidence as the other cases in support of those claims.  Consolidation, therefore, is appropriate here because all four actions involve common questions of law and/or fact.  *See* Fed. R. Civ. P. 42(a); *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990).

## II.    MOVANTS SHOULD BE APPOINTED LEAD PLAINTIFFS

---

security at issue on a stock exchange.  Here the securities were not traded on an exchange, and the gravamen of plaintiffs' allegations is that Defendants failed to disclose that ARS were not cash equivalents and that their continuing liquidity was very uncertain.  In these cases, investors were harmed in several ways because, *inter alia*, (i) they overpaid for their ARS and received an inadequate rate of interest for a non-cash equivalent security, (ii) their holdings have now become illiquid, and (iii) the value of the ARS is impaired and was even written down by Defendants and other due to the lack of a market for the securities. The relative financial interests of the parties applying for lead plaintiff status can, however, be determined from the certification required under Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(a)(2)(A) and the information concerning the current market for the securities.

The Movants should be appointed Lead Plaintiffs in the Exchange Act Actions because they complied with all of the PSLRA's requirements, may have the largest financial interest in this litigation, and otherwise meet the relevant requirements of Fed. R. Civ. P. 23.

### A.      THE REQUIREMENTS OF THE PSLRA

The PSLRA establishes a procedure that governs the appointment of a Lead Plaintiff in "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(l) and (a)(3)(B)(i).

First, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). The plaintiff in the first-filed, above-captioned action alleging violations of the Exchange Act caused notice to be published pursuant to the PSLRA on *PrimeNewswire* on March 27, 2008.[6]

Second, within 60 days of publishing the notice, any person or group of persons who are members of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they previously filed a complaint in the action. 15 U.S.C. § 78u-4(a)(3)(A) and (B).

Finally, within 90 days after publication of the initial notice of pendency, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the court determines to be most capable of adequately representing the interests of class members. 15 U.S.C. § 78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that:

---

[6] *See* Congress Decl., Ex. B. National news wire services have been recognized as suitable vehicles for meeting the statutory requirement that notice be published "in a widely circulated national business-oriented publication or wire service." *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 62-64 (D. Mass. 1996); *Lax v. First Merchs. Acceptance Corp.*, No. 97-C-2715, 1997 U.S. Dist. LEXIS 11866, at *2 (N.D. Ill. Aug. 6, 1997).

[T]he court shall adopt a presumption that the most adequate plaintiff in any private

action arising under this Act is the person or group of persons that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).  *See In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002); *see*

*also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D.

395, 402-04 (S.D.N.Y. 2004).

### B.    MOVANTS SATISFY THE LEAD PLAINTIFF REQUIREMENTS OF THE PSLRA

#### 1.    Movants Complied With The PSLRA, Are The Most Adequate Plaintiffs Under the PSLRA, And Should Be Appointed Lead Plaintiffs

Movants' instant application is filed within the time period in which class members may

move to be appointed Lead Plaintiff in this case, under 15 U.S.C. § 78u-4(a)(3)(A) and (B),

which expires on May 27, 2008.  Movants reviewed the allegations in the instant action and

authorized the filing of a complaint against Defendants and are willing to serve as representatives

on behalf of the class.  *See* Congress Decl., Ex. A.  In addition, Movants selected and retained

highly experienced and competent counsel to represent them and the class.  *See* Congress Decl.,

Ex. C (attaching firm résumé of Milberg).  Movants will serve as a cohesive team in light of the

close relationship between the two movant corporations.[7]

---

[7] A close family relationship exists between Movants Wedgwood Tacoma LLC and Jemstone LLC, both of which are owned by members of the same family.  Pamela R. Mayer, who signed

Accordingly, Movants satisfy the individual requirements of 15 U.S.C. § 78u-4(a)(3)(B) and their application for appointment as Lead Plaintiffs, and selection of Milberg as Lead Counsel, should be approved by the Court.

> **2.    Movants Have the Requisite Financial Interest in the Relief Sought by the Class**

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the Court shall appoint as Lead Plaintiff the Class member who represents the largest financial interest in the relief sought by the action. *See In re Cavanaugh*, 306 F.3d. at 730 ("[T]he district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit."); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001) (identification of the most adequate plaintiff, "begins with the identification of the movant with 'the largest financial interest in the relief sought by the class.'") (*quoting* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb)).

In securities cases brought pursuant to the PSLRA, the relative financial interest of lead plaintiff movants is often measured by the difference between the class-period purchase price of the securities on the one hand, and sale price of the securities subsequent to disclosure of Defendants' materially false and misleading statements on the other. The cases at bar are different because the gravamen of plaintiffs' allegations is that Defendants failed to disclose, among other things, that ARS were not cash equivalents and that their continuing liquidity was very uncertain. In these cases, investors were harmed when their investments became illiquid. Unlike many securities cases, the ARS were traded at auctions, not on a stock or board exchange. Investors were harmed because they cannot access and use their own money, the value of their holdings is uncertain and was written down by the Defendants, the purported values of the ARS

---

the Wedgewood certification as Wedgewood's manager, is the mother of Joseph Mayer, the Manager of Jemstone who signed the Jemstone certification.

were inflated by Defendants' deception, and interest rates on the ARS were much lower than market rates for securities that were not cash equivalents.

During the Class Period, as evidenced by, among other things, the accompanying signed Certifications (*see* Congress Decl., Ex. A), the Movants purchased a total of $3.9 million in ARS from Defendants, $3.775 million of which they still hold as of the filing of this motion, and were injured thereby. Thus, Movants' financial interest in this litigation is at a minimum the $3.775 million they paid for ARS from Citigroup, which are now illiquid. Accordingly, Movants may satisfy all of the PSLRA's prerequisites for appointment as Lead Plaintiffs in this action and should be appointed Lead Plaintiffs pursuant to 15 U.S.C. § 78u4(a)(3)(B).

### 3.    Movants Otherwise Satisfy Rule 23

According to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must also "'otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure.'" *See In re Cavanaugh*, 306 F.3d. at 730. Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two -- typicality and adequacy -- directly address the personal characteristics of the class representative. Consequently, in

deciding a motion for Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the motion for class certification. *See id.*; *see also Lax*, 1997 U.S. Dist. LEXIS 11866, at *20; *Fischler v. Amsouth Bancorporation*, No. 96-1567-CIV-T-17A, 1997 U.S. Dist. LEXIS 2875, at *7-8 (M.D. Fla. Feb. 6, 1997); *Pirelli Armstrong Tire Corp.*, 229 F.R.D. at 412. As detailed below, Movants satisfy both the typicality and adequacy requirements of Rule 23, thereby further justifying its appointment as Lead Plaintiffs.

### a.    Movants Fulfill the Typicality Requirements

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. Typicality exists where the plaintiffs' claims arise from the same series of events and are based on the same legal theories as the claims of all the class members. *See Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985); *see also Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986); *Pirelli Armstrong Tire Corp.*, 229 F.R.D. at 412; *Babcock v. Computer Assocs. Int'l*, 212 F.R.D. 126, 130 (E.D.N.Y. 2003). The requirement that the proposed class representative's claims be typical of the claims of the class does not mean, however, that the claims must be identical. *See Pirelli Armstrong Tire Corp.*, 229 F.R.D. at 412; *Philips v. Joint Legislative Comm. on Performance & Expenditure Review*, 637 F.2d 1014, 1024 (5th Cir. 1981). Typicality does not require that there be no factual differences between the class representatives and the class members because it is the generalized nature of the claims asserted that determines whether the class representatives are typical. *See Priest v. Zayre Corp.*, 118 F.R.D. 552, 555 (D. Mass. 1988) ("With respect to typicality under Rule 23(a)(3), plaintiffs need not show substantial identity between their claims and those of absent class members, but need only show that their claims arise from the same course of conduct that gave rise to the claims of the absent [class] members") (citation omitted). Since the plaintiffs seek to prove that

Defendants "committed the same unlawful acts in the same method against an entire class . . . all members of this class have identical claims . . . . [t]herefore, the certification of the suit as a class action satisfied the requirements of Rule 23(a)(3)." *Kennedy v. Tallant,* 710 F.2d 711,717 (11th Cir. 1983).

Movants seek to represent a class of purchasers of Citigroup ARS that have virtually identical, non-competing and non-conflicting interests. Movants satisfy the typicality requirement because, as with all other class members, they: (1) purchased or otherwise acquired Citigroup ARS during the Class Periods set out in the complaints; (2) purchased or otherwise acquired Citigroup ARS on terms that were inappropriate for a non-cash equivalent investment as a result of the same allegedly materially false and misleading statements and/or omissions; and (3) suffered economic loss thereby when the market for ARS collapsed and the ARS became illiquid. Thus, Movants' claims are typical of those of other class members since their claims and the claims of other class members are identical or substantially similar and arise out of the same course of events.

### b.    Movants Fulfill the Adequacy Requirement

Under Rule 23(a)(4), the representative parties must fairly and adequately protect the interests of the class. The PSLRA directs this Court to limit its inquiry regarding the adequacy of Movants to represent the class to the existence of any conflicts between the interest of Movants and the other members of the class. Thus, the standard for adequacy is met if it appears that (1) the named plaintiff has interests in common with, and not antagonistic to, the class's interests; and (2) the plaintiff's attorneys are qualified, experienced and generally able to vigorously conduct the litigation. *See, e.g., Kirkpatrick v. J. C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987); *see also In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 800 (3d Cir. 1995); *Babcock*, 212 F.R.D. at 131 (citation omitted).

As detailed above, Movants are adequate representatives of the class because they share common questions of law and fact with the members of the class and their claims are typical of the claims of other class members.  As evidenced by the injury suffered by Movants, who acquired $3.775 million in ARS from Citigroup during the Class Period that they continue to hold, pursuant to materially false and misleading statements and/or omissions, the interests of Movants are clearly aligned with the interests of the members of the class, and there is no evidence of any antagonism between Movants' interests and those of the other members of the class.

Further, Movants took significant steps demonstrating that they will continue to protect the interests of the class: they executed a Certification detailing their Class Period transactions and expressing their willingness to serve as Lead Plaintiffs; they moved this Court to be appointed as Lead Plaintiffs in this action; and they retained competent and experienced counsel who, as shown below, will vigorously conduct this complex litigation in a professional and efficient manner.  *See generally Lax*, 1997 U.S. Dist. LEXIS 11866, at *21-25.

III.    **THE COURT SHOULD APPROVE MOVANTS' CHOICE OF MILBERG AS LEAD COUNSEL OF THE SECURITIES ACTIONS PURSUANT TO THE PSLRA AND AS INTERIM LEAD COUNSEL OF THE IAA CLAIMS UNDER RULE 23**

A.    **Milberg Satisfies the Requirements Of the PSLRA**

Movants' choice of Lead Counsel satisfies the requirements of the PSLRA.  Pursuant to 15 U.S.C § 78u-4(a)(3)(B)(v), the Lead Plaintiff shall, subject to Court approval, select and retain counsel to represent the class.  The Court should not disturb the Lead Plaintiffs' choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).  *See also In re Cavanaugh*, 306 F.3d 726.  Movants selected and retained

Milberg to serve as Lead Counsel for the class.[8]  Milberg possesses extensive experience litigating securities class actions and has successfully prosecuted numerous securities class actions on behalf of injured investors.  *See* Congress Decl., Ex. C.  Thus, the Court may be assured that by approving Movants' choice of Lead Counsel, the class will receive the highest caliber of legal representation.

### B.    Milberg Satisfies the Requirements of Rule 23(g)

With respect to the Investment Advisors Act claim, Movants also seek the appointment of Milberg as Interim Lead Counsel to act on behalf of the putative Class pursuant to Fed. R. Civ. P. 23(g).  The action filed by Movants--*Wedgewood*-- is the only action before the Court that pleads both the securities claims and the Investment Advisors Act claim.

In determining Interim Lead Counsel, the court should "conduct an independent review … to ensure that counsel appointed to leading roles are qualified and responsible, that they will fairly and adequately represent all of the parties on their side, and that their charges will be reasonable."  *See* Manual for Complex Litigation § 10.22 (4th ed. 2004).  Indeed, the most important factor is "achieving efficiency and economy without jeopardizing fairness to the parties."  *Id*. at § 10.221.  When appointing interim lead counsel, it is "generally accepted that the considerations set out in Rule 23(g)(1)(C) [now Rule 23(g)(1)(A)-(E)], which governs appointment of class counsel once a class is certified, apply equally to the designation of interim

---

[8] Movants were advised that Milberg, and three former named partners (who are no longer with the firm) were indicted, and that the former partners pled guilty while the firm pled innocent. Movants were also advised about the nature of the charges and the status of those proceedings.

class counsel before certification." *In re Air Cargo Shipping Servs. Antitrust Litig*., 240 F.R.D.

56, 57 (E.D.N.Y. 2006).[9]

Fed. R. Civ. P. 23(g)(1)(A) specifies that in appointing class counsel, the court must

consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class;

Movants submit that appointment of Milberg as the Interim Lead Counsel satisfies the

requirements of Fed. R. Civ. P. 23(g)(1)(A).  Plaintiffs further request that the proposed Lead

Counsel be appointed pursuant to Fed. R. Civ. P. 23(g)(3), which provides for the designation of

interim class counsel to act on behalf of a putative class before the determination of whether to

certify the action as a class action.

The first Fed. R. Civ. P. 23 (g)(1)(A) consideration, which focuses on the work counsel

has done to advance the litigation, strongly favors Movants' counsel.  Milberg filed a complaint

on May 8, 2008, dedicated substantial resources to advancing the case by extensively

investigating Citigroup's alleged wrongdoing (Milberg employs a number of full-time private

investigators) and reviewed court actions and pleadings, as well as media and other reports.

Based on the firms' prior experience in bringing and pursuing complex claims such as those

asserted here, the proposed Interim Lead Counsel fully understands the substantial investment of

---

[9] Effective December 1, 2007, Fed. R. Civ. P. 23(g) was amended in accordance with the "general restyling of the Civil Rules."  *See* Fed. R. Civ. P. 23 Advisory Committee Notes. Accordingly, the changes to Rule 23(g) "are intended to be stylistic only."  *See id*.  Thus, former Rule 23(g)(1)(C) is substantively identical to what is now Rule 23(g)(1)(A)-(E).

time and resources necessary to properly pursue and lead the instant action, and is committed to making the necessary investment in this case.

The second and third Fed. R. Civ. P. 23(g)(1)(A) factors, which address counsel's relevant class action experience and knowledge of applicable law, also strongly favor Milberg, which is uniquely qualified to lead the prosecution of this case. Milberg is highly regarded and experienced in prosecuting complex and class action litigation with a well-known record of success pursuing financial, accounting, and securities fraud matters which are highly relevant to this litigation and successfully litigated many other class action claims. *See* Congress Decl., Ex. C.

In addition, Milberg often takes a leading role among law firms in pursuing securities fraud claims on behalf of investors and has obtained substantial recoveries. Indeed, a study recently ranked Milberg first for recoveries totaling approximately $3,804,625,000 for this past year and in the top five, with respect to settlements in securities fraud class actions, in terms of aggregate settlement totals, average settlement amounts and number of settlements, in 2006 and 2007. *See* http://www.riskmetrics.com/issgovernance/scas/scas50_2007.html and http://www.riskmetrics.com/issgovernance/scas/scas50_2006.html.

In the past two years alone, Milberg successfully settled and received preliminary and/or final approval for settlement in many complicated class actions. For example, on December 26, 2006, Milberg settled a case against Nortel Networks Corp. for cash and stock valued at $1.32 billion. *In re Nortel Networks Corp. Sec. Litig.*, No. 01-CV-1855 (S.D.N.Y. filed Mar. 2, 2001) (Berman, J.). In June 16, 2006, Milberg achieved settlement and final approval of settlement with KPMG for $225 million. *Simon v. KPMG LLP*, No. 05-CV-03189 (D.N.J. filed June 24, 2005). On January 10, 2007, Milberg received final court approval of a settlement with Sears for

$215 million.  *In re Sears, Roebuck & Co. Sec. Litig.*, No. 02-CV-7527 (N.D. Ill. filed Oct. 18,

2002).  In September 2007, Milberg settled the *CMS Energy* securities litigation for $200

million.  *Green v. CMS Energy Corp.*, No. 02-CV-72004 (E.D. Mich. filed May 17, 2002).  And

just recently, Judge Lynch preliminarily approved a settlement with Biovail Corporation for

$138 million where Milberg is co-lead counsel.  *In re Biovail Corp. Sec. Litig.*, No. 03-cv-8917-

GEL (S.D.N.Y. filed Nov. 12, 2003).

     Significantly, on December 19, 2007, Judge Paul Barbadoro of the District of New

Hampshire granted final approval of a $3.2 billion settlement of investor claims involving Tyco

International, Ltd.  Milberg was Co-lead counsel for plaintiffs in the *Tyco* litigation and worked

to achieve the largest cash payment ever made by a corporate defendant in the history of U.S.

securities litigation, and the second-largest auditor settlement in securities class action history.

*In re Tyco Sec. Litig.*, No. 02-md-01335 (D.N.H. filed Aug. 23, 2002).

     The final Fed. R. Civ. P. 23(g)(1)(A) factor, which concerns the resources counsel will

commit to the case, also strongly supports appointment of Milberg as the Interim Lead Counsel.

Milberg is a well-established and successful law firm that has the resources necessary to pursue a

case of this magnitude.  Indeed, Milberg will dedicate the resources necessary to represent

zealously the interests of the Class members in this action.

<u>**CONCLUSION**</u>

     For the reasons stated above, Movants satisfy the requirements of the PSLRA and are the

most adequate plaintiffs in this action, and should be appointed Lead Plaintiffs pursuant to 15

U.S.C. § 78u-4(a)(3)(B).  As the most adequate plaintiffs, Movants respectfully request that the

Court: (1) consolidate the related actions; (2) appoint Movants as Lead Plaintiffs pursuant to the

PSLRA; (3) approve Movants' selection of Milberg as Lead Counsel in this action and in any

subsequently filed and/or related cases; (4) appoint Milberg as Interim Lead Counsel of the

Investment Advisors Act Claims under Rule 23(g); and (5) grant such other and further relief as the Court may deem just and proper.

Dated:  May 27, 2008                              Respectfully submitted,

                                                  **MILBERG LLP**

                                                  By: */s/ Jerome M. Congress*
                                                  Jerome M. Congress (JC-2060)
                                                  Kent A. Bronson (KB-4906)
                                                  One Pennsylvania Plaza, 49th Floor
                                                  New York, New York 10119
                                                  Telephone:    (212) 594-5300
                                                  Facsimile:    (212) 868-1229
                                                  jcongress@milberg.com
                                                  kbronson@milberg.com

435972_1                              17