# UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LHB INSURANCE BROKERAGE INC., on behalf of itself and all others similarly situated, | **ECF CASE** |
| Plaintiff, | Civil Case No: 1:08-CV-03095-LTS |
| v. | |
| CITIGROUP INC. and CITIGROUP GLOBAL MARKETS, INC., | |
| Defendants. | |
| LISA SWANSON, Individually And On Behalf of All Others Similarly Situated, | **ECF CASE** |
| Plaintiff, | Civil Case No: 1:08-CV-03139-LTS |
| v. | |
| CITIGROUP, INC., CITIGROUP GLOBAL MARKETS, INC. and CITI SMITH BARNEY, | |
| Defendants. | |

[Additional Captions to Follow]

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE
MOTION OF DR. MICHAEL A. PASSIDOMO FOR CONSOLIDATION
AND FOR APPOINTMENT OF LEAD PLAINTIFF AND
LEAD COUNSEL, AND IN OPPOSITION TO COMPETING MOTIONS**

| | |
|---|---|
| SAMUEL A. STOCKHAMER and ALICE L. STOCKHAMER, On Behalf of Themselves and All Others Similarly Situated,<br><br>          Plaintiff,<br><br>  v.<br><br>CITIGROUP INC. and CITIGROUP GLOBAL MARKETS, INC.,<br><br>          Defendants. | **ECF CASE**<br><br>Civil Case No: 1:08-CV-03904-LTS |
| WEDGEWOOD TACOMA LLC, Individually And On Behalf of All Others Similarly Situated,<br><br>          Plaintiff,<br><br>  v.<br><br>CITIGROUP INC., CITIGROUP GLOBAL MARKETS, INC., and CITI SMITH BARNEY,<br><br>          Defendants. | **ECF CASE**<br><br>Civil Case No: 1:08-CV-04360-LTS |
| SAED GHALAYINI, Individually And On Behalf of All Others Similarly Situated,<br><br>          Plaintiff,<br><br>  v.<br><br>CITIGROUP INC., CITIGROUP GLOBAL MARKETS, INC., and CITI SMITH BARNEY,<br><br>          Defendants. | **ECF CASE**<br><br>Civil Case No: 1:08-CV-05016-UA |

## TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................................. 1

II. DR. PASSIDOMO SHOULD BE APPOINTED LEAD PLAINTIFF ................................ 2

   A. The Movant Satisfies the Typicality and Adequacy Requirements of Rule 23 ............... 4

III. THE COURT SHOULD APPROVE THE
MOVANT'S CHOICE OF LEAD COUNSEL ................................................................... 5

IV. THE WEDGEWOOD GROUP'S REQUEST TO APPOINT A
LAW FIRM UNDER INDICTMENT SHOULD BE DENIED AND
RAISE SERIOUS CONCERNS ABOUT THE GROUP'S ADEQUACY ........................... 6

V. CONCLUSION .................................................................................................................. 9

## TABLE OF AUTHORITIES

Cases

*Albert Fadem Trust v. Citigroup, Inc.*,
  239 F. Supp. 2d 344 (S.D.N.Y. 2002) ................................................................................ 2, 4, 6

*In re Doral Financial Corp. Sec. Litig.*,
  414 F. Supp. 2d 398 (S.D.N.Y. 2006) ......................................................................................... 3

*Kaplan v. Gelfond*,
  240 F.R.D. 88 (S.D.N.Y. 2007) .............................................................................................. 5, 6

*In re Medtronic, Inc., Implantable Defibrillator Prod. Liab. Litig.*,
  434 F. Supp. 2d 729 (D. Minn. 2006) .......................................................................................... 8

*In re New Motor Vehicles Canadian Export Antitrust Litig.*,
  466 F. Supp. 2d 364 (D. Me. 2006) ......................................................................................... 7, 8

*In re Organogenesis Sec. Litig.*,
  241 F.R.D. 397 (D. Mass. 2007) ................................................................................................. 7

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc.*,
  229 F.R.D. 395 (S.D.N.Y. 2004) ................................................................................................. 4

*Schoenbaum v. E.I. DuPont De Nemours & Co.*,
  No. 4:05CV 01108 ERW, 2008 WL 877962 (E.D. Mo. Mar. 27, 2008) ................................ 6, 7

*Sofran v. LaBranche & Co., Inc.*,
  220 F.R.D. 398 (S.D.N.Y. 2004) ......................................................................................... 2, 5, 8

*Walker v. Deutsche Bank, AG*,
  No. 04 Civ. 1921 (DAB), 2005 WL 2207041 (S.D.N.Y. Sept. 6, 2005) ..................................... 6

Statutes

15 U.S.C. § 78u-4(a)(3) ................................................................................................................ 2, 5

Rules

Fed. R. Civ. P. 23 ................................................................................................................. 1, 2, 4, 5
Fed. R. Civ. P. 42(a) ......................................................................................................................... 6

**I.     INTRODUCTION**

Dr. Michael A. Passidomo (the "Movant" or "Dr. Passidomo") hereby submits this memorandum of law in further support of his motion for consolidation, appointment as Lead Plaintiff and approval of his selection of Zwerling, Schachter, & Zwerling, LLP ("Zwerling, Schachter") to serve as Lead Counsel, and in opposition to the motions of the Dignam Group, the LHB Insurance Group, and the Wedgewood Group (herein consisting of the Wedgewood Tacoma LLC and Jemstone LLC movants).

Pending before this Court are four competing motions for appointment of Lead Plaintiff. Pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Dr. Passidomo should be appointed Lead Plaintiff because his financial interest in this litigation is significantly larger than that of any of the competing movants. Dr. Passidomo's financial interest of $10,950,000 dwarfs that of any of the individual movants and is, in fact, greater than all of the other movants ***combined***.[1] Accordingly, because Dr. Passidomo has the largest financial interest and satisfies the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure, he is presumptively the most adequate plaintiff under the PSLRA and his motion

---

[1] Four of Dr. Passidomo's Auction Rate Securities ("ARS") holdings may now, or in the future, be subject to partial redemptions: the Blackrock Florida Municipal Bond Fund will redeem 12.09% of its outstanding shares on June 26, 2008; the Blackrock California Municipal Income Trust will redeem 23.53% of its outstanding shares on June 25, 2008; the Nuveen Dividend Advantage Municipal Fund will redeem between 7% and 20% of its outstanding shares by June 25, 2008; and the Eaton Vance Insured California Municipal Bond Fund began redemptions of 55% of its outstanding shares on May 16, 2008. To date, none of Dr. Passidomo's holdings have been redeemed. In any event, applying the maximum stated redemptions to Dr. Passidomo's holdings would bring his total financial interest to $9,653,200, still well-above that of all of the other movants ***combined***. (*See* Affidavit of Richard A. Speirs in Support of The Motion of Dr. Michael A. Passidomo for Consolidation and for Appointment of Lead Plaintiff and Lead Counsel, dated May 27, 2008 ("Speirs Aff."), Ex. C.)

should be approved.[2]  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii); *Sofran v. LaBranche & Co., Inc.*, 220 F.R.D. 398, 402 (S.D.N.Y. 2004).  Dr. Passidomo's selection of Lead Counsel should also be approved as Zwerling, Schachter has extensive experience in the prosecution of securities class actions and will adequately represent the interests of the Class.

## II.  DR. PASSIDOMO SHOULD BE APPOINTED LEAD PLAINTIFF

Pursuant to the PSLRA, the *presumptively* "most adequate plaintiff" is the movant with the largest financial interest that otherwise satisfies the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii); *Albert Fadem Trust v. Citigroup, Inc.*, 239 F. Supp. 2d 344, 347 (S.D.N.Y. 2002).  Once that movant is identified, the inquiry ends and the Court must look *no further* at the other lead plaintiff candidates unless the adequacy and typicality of the presumptive lead plaintiff is rebutted.  *See Sofran*, 220 F.R.D. at 402 ("Once . . . the court identifies the plaintiff with the largest stake in the litigation, further inquiry must focus on that plaintiff alone and be limited to determining whether he satisfies the other statutory requirements.") (alteration in original) (quoting *In re Cavanaugh,* 306 F.3d 726, 732 (9th Cir. 2002)).

Dr. Passidomo's financial interest in this litigation is significantly larger than that of any of the competing movants.  During the Class Period, he purchased $10,950,000 of ARS, all of which he continues to hold.  (*See* Speirs Aff., Ex. C.)  Thus, as illustrated by the chart below, his financial interest in ARS is greater than the losses reported by all of the competing movants *combined*, and more than $7 million larger than that reported by the Wedgewood Group, the

---

[2] As detailed in the Movant's opening brief, Dr. Passidomo is a member of the putative Class and has timely moved for appointment as Lead Plaintiff.  (*See* Memorandum of Law in Support of The Motion of Dr. Michael A. Passidomo for Consolidation and for Appointment of Lead Plaintiff and Lead Counsel, dated May 27, 2008 ("Pl.'s Br."), at 7.)

movant with next largest financial interest.

| Lead Plaintiff Movant | Net Funds Expended on ARS Purchases During Class Period | Reported Financial Interest |
|---|---|---|
| Dr. Passidomo | $10,950,000 | $10,950,000 |
| Wedgewood Group | $3,900,000 | $3,775,000[3] |
| Dignam Group | $1,850,000 | $1,350,000 |
| LHB Insurance Group | $3,225,000 | $100,000[4] |

It should also be noted that the other movants' efforts to claim the largest financial interest by aggregating various unrelated plaintiffs are disfavored under the PSLRA. Dealing with similar attempts in *In re Doral Financial Corp. Sec. Litig.*, Judge Owen explained:

> With the exception of the *1199SEIU Fund,* which is a single-party movant, the putative plaintiffs have aggregated themselves into "groups" of otherwise unrelated investors, and their *collective* financial interest is thus calculated. Nothing before this Court indicates that these random cumulations of plaintiffs are anything more than an effort to achieve the highest possible "financial interest" figure to be chosen, which, however, also cumulates case control problems and rival disagreements, resulting in delay and increased expense. I

---

[3] The Wedgewood Group states that one of its two movants, Jemstone LLC, indicated that "approximately $1.5 million of its ARS will be redeemed in the near future[,]" thereby reducing the Group's total financial interest to $2.275 million. (*See* Memorandum of Law In Support of the Motion of Wedgewood Tacoma LLC and Jemstone LLC for Consolidation, Appointment as Lead Plaintiffs and Approval of Selection of Lead Counsel, dated May 27, 2008, at 1 n.1.)

[4] The LHB Insurance Group claims it "purchased $3,225,000 of illiquid ARS" during the Class Period and implies that that figure represents their total financial interest. (*See* Memorandum of Law In Support of the LHB Insurance Group's Motion for (1) Appointment as Lead Plaintiff and (2) Approval of Their Selection of Lead Counsel, dated May 27, 2008, at 8.) However, a close examination of the certifications supplied by the members of the LHB Insurance Group reveals that, during the Class Period, they "brought and sold" nearly all of their ARS holdings. Indeed, four of the five members of the Group apparently sold all of their ARS holdings prior to February 13, 2008, the end of the Class Period. (*See*, *e.g.*, Declaration of Joseph E. Levi, dated May 27, 2008, Ex. B (The Certification of Ian Lande, MD ¶ 4 provides: "Below is the amount of securities that . . . I have bought and sold during the Class Period . . . .").) The sole member of the Group with any remaining financial interest in this litigation is movant Michael S. Bell, who continues to hold $100,000 in ARS that were purchased during the Class Period. (*See* Declaration of Joseph E. Levi, dated May 27, 2008, Ex. B.)

3

> reject this approach as essentially inconsistent with the intention of the PSLRA. As I have recently noted, based on earlier precedent, by allowing attorneys to designate otherwise unrelated plaintiffs as a purported "group," and by allowing unrelated groups to aggregate investments in an effort to generate the "largest financial interest," a strong possibility emerges that lawyers will form such groups to manipulate the selection process, and thereby gain control of the litigation. *See In re Pfizer Inc. Sec. Litig.,* 233 F.R.D. 334, 2005 WL 2759850 (S.D.N.Y. 2005); *In re Razorfish Sec. Litig.,* 143 F.Supp.2d 304, 306-07 (S.D.N.Y. 2001); *In re Donnkenny Inc. Sec. Litig.,* 171 F.R.D. 156, 157-58 (S.D.N.Y. 1997) (refusing to allow unrelated plaintiffs to aggregate losses and serve as lead plaintiff, noting that "Congress [in enacting the PSLRA] hoped that the lead plaintiff would seek the lawyers, rather than having the lawyers seek the lead plaintiff."); *In re Telxon Corp. Sec. Litig.,* 67 F.Supp.2d 803, 813-16 (N.D. Ohio 1999) ("[T]he context and structure of the PSLRA evince an intent that a 'group' consist of more than a mere assemblage of unrelated persons who share nothing in common other than the twin fortuities that (1) they suffered losses and (2) they entered into retainer agreements with the same attorney or attorneys.").

414 F. Supp. 2d 398, 401-02 (S.D.N.Y. 2006) (alterations in original).

In any event, individually or combined, the other movants fall far short of approaching Dr. Passidomo's financial interest in this litigation. Accordingly, Dr. Passidomo unquestionably has the "largest financial interest" and is the most adequate plaintiff to lead the litigation.

### A. The Movant Satisfies the Typicality and Adequacy Requirements of Rule 23

In addition to meeting the PSLRA's requisites set forth above, a lead plaintiff must also make a "preliminary showing" of typicality and adequacy under Rule 23(a) of the Federal Rules of Civil Procedure. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 412 (S.D.N.Y. 2004); *Albert Fadem Trust*, 239 F. Supp. 2d at 347. Dr. Passidomo easily satisfies those requirements.

"Typicality exists if claims 'arise from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Pirelli*, 229 F.R.D. at 412 (quoting *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). The claims of the lead plaintiff need not be identical to the claims of the class to satisfy typicality. *Id.*

Dr. Passidomo's satisfies typicality under Rule 23(a)(3) as he claims to have sustained damages from the same alleged course of conduct and the same violations of the federal securities laws as the other class members.

To "satisfy the adequacy requirement of Rule 23(a)[(4)] '(1) there should be no conflict between the interests of the class and the named plaintiff nor should there be collusion among the litigants; and (2) the parties' attorney must be qualified, experienced, and generally able to conduct the proposed litigation.'" *Sofran*, 220 F.R.D. at 403 (quoting *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. MDL 1500, 2003 WL 102806, at *2 (S.D.N.Y. Jan. 10, 2003)). Dr. Passidomo's interests are aligned with — and certainly are not antagonistic to — the interests of the other class members. Due to his significant financial stake in this litigation, interest in prosecuting this matter, and choice of proposed Lead Counsel, it is clear that Dr. Passidomo will vigorously prosecute the claims against Defendants and protect the interests of the Class.[5]

### III.   THE COURT SHOULD APPROVE THE MOVANT'S CHOICE OF LEAD COUNSEL

Pursuant to the PSLRA, the lead plaintiff is permitted, subject to the Court's approval, to select and retain counsel to represent the class. 15 U.S.C. § 78u-4(a)(3)(B)(v); *Kaplan v. Gelfond*, 240 F.R.D. 88, 96 (S.D.N.Y. 2007). Dr. Passidomo has selected and retained Zwerling, Schachter to represent him and serve as Lead Counsel for the putative class. Zwerling,

---

[5] Zwerling, Schachter, as counsel to Dr. Passidomo, were recently informed by counsel for the Wedgewood Group of an administrative finding involving Dr. Passidomo in connection with a Medicaid review by the Kentucky Cabinet for Health Services for a period between 1992-1993. To the extent the Wedgewood Group argues that this suggests that Dr. Passidomo may be an inadequate Lead Plaintiff, counsel for Dr. Passidomo will address such arguments in its Reply Brief. It is submitted, however, that the review, which relates to events that occurred over fifteen years ago, is absolutely distinct from the claims in this litigation, does not arise out of or touch upon the prosecution of this lawsuit, and has no bearing on Dr. Passidomo's adequacy in representing the Class and its interests.

Schachter has extensive experience in the areas of securities class action litigation and other complex litigation, and has been responsible for significant successful results on behalf of injured investors in numerous securities class action lawsuits, as well as legal decisions that enable litigation such as this to be successfully prosecuted.  (*See* Speirs Aff., Ex. D.)[6]

## IV.   THE WEDGEWOOD GROUP'S REQUEST TO APPOINT A LAW FIRM UNDER INDICTMENT SHOULD BE DENIED AND RAISE SERIOUS CONCERNS ABOUT THE GROUP'S ADEQUACY

The Wedgewood Group's proposed lead counsel, Milberg LLP, is under indictment on charges that the firm and seven of its partners conspired to obtain $251 million in attorney fees by paying kickbacks to plaintiffs in shareholder and class action lawsuits.  Four of the partners have pled guilty, including co-founding partner Melvyn Weiss, who was sentenced this month to 30 months in prison, and former partner, William Lerach, who began a 24 month sentence last month.  (*See* Speirs Decl., Ex. B.)  Several courts have already determined that the firm's legal troubles render it inadequate to serve as class counsel.  *See*, *e.g.*, *Schoenbaum v. E.I. DuPont De Nemours & Co.*, No. 4:05CV01108 ERW, 2008 WL 877962, at *1-3 (E.D. Mo. Mar. 27, 2008);

---

[6] In their opening briefs, all of the movants, except for the LHB Insurance Group (which has not stated a position), specifically requested the consolidation of the related actions then pending before the Court.  A fifth putative class action, *Ghalayini v. Citigroup, Inc.*, Case No. 1:08-CV-5016-UA (S.D.N.Y.), was filed in this district on May 30, 2008.  (*See* Declaration of Richard A. Speirs in Further Support of The Motion of Dr. Passidomo for Consolidation and for Appointment of Lead Plaintiff and Lead Counsel, and In Opposition to Competing Motions, dated June 16, 2008 ("Speirs Decl."), Ex. A.)  That matter has already been referred to this Court as possibly related to the *LHB* action (Case No: 1:08-CV-03095-LTS).  *Id.*  In fact, the claims and class period in *Ghalayini* are nearly identical to *LHB* – the only difference being that the class period in *Ghalayini* begins on May 27, 2003 instead of May 26, 2003 – and the other related actions pending before this Court.  *Id.*; (Pl.'s Br. at 5-6.)  Accordingly, *Ghalayini* should be consolidated with the other related actions pursuant to Fed. R. Civ. P. 42(a).  (*See* Pl.'s Br. at 5-6); *Albert Fadem Trust*, 239 F. Supp. 2d at 347; *Kaplan*, 240 F.R.D. at 91; *Walker v. Deutsche Bank, AG*, No. 04 Civ. 1921 (DAB), 2005 WL 2207041, at *2 (S.D.N.Y. Sept. 6, 2005).

*In re Organogenesis Sec. Litig.*, 241 F.R.D. 397, 410 (D. Mass. 2007); *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 466 F. Supp. 2d 364, 367-70 (D. Me. 2006).

In removing Milberg LLP as co-interim class counsel in *Schoenbaum*, the court reasoned it was "specifically concerned with the need for additional discovery as a result of the indictment, the future viability of Milberg Weiss, and 'the possibility of distraction as the firm . . . struggle[s] to defeat the criminal charges.'"[7] 2008 WL 877962, at *2 (alterations in original) (quoting *In re Organogenesis*, 241 F.R.D. at 410). Likewise, Milberg LLP was removed from the Plaintiffs' Executive Committee in *In re New Motor Vehicles*, where the court noted:

> Obviously, I cannot predict what the criminal proceedings will do to the ultimate viability of the firm. Although I was urged to deny the motion to disqualify because the firm is not in immediate jeopardy, I conclude that a fiduciary would not wait: the benefits of maintaining the status quo do not outweigh the risks. It is better to restructure the leadership of class counsel now before this civil litigation or the criminal case is further along.

466 F. Supp. 2d at 369.

To date, the concerns about Milberg LLP's viability and the potential distractions stemming from its criminal indictment remain unabated. Thus, Milberg LLP's ability to act in the best interests of the Class is, at best, questionable. Accordingly, the Wedgewood Group's request to appoint Milberg LLP as Lead Counsel should be rejected.

---

[7] The court in *Schoenbaum* stated that its "concerns with the future viability of Milberg Weiss and the possible distraction the firm faces as the trial date grows nearer are both related to the firm's resources. A number of Milberg Weiss partners and associates have left the firm since the indictment. It is clear that, even beyond the number of attorneys in its employ, Milberg Weiss is a different law firm today than it was when the Court made the January 2006 appointment. While Milberg Weiss asserts to the Court that a criminal trial would not prove to be a distraction, the Court is not persuaded." 2008 WL 877962, at *2 (footnotes omitted). In its March 27, 2008 decision, the court also noted that Milberg LLP "has lost 48 attorneys since their appointment as co-interim class counsel in January 2006." *Id.* at *2 n.5.

Further, the Wedgewood Group's decision to retain a firm under indictment for charges relating to the same type of case and proceeding currently before the Court calls into question their discretion and adequacy to serve as fiduciaries of the Class. *See In re New Motor Vehicles*, 466 F. Supp. 2d at 370 (in view of the charges against the firm and concerns about its viability finding that "the answer is clear: as a fiduciary for the class, I should not permit Milberg Weiss to continue in its leadership role."). As noted by the court in *In re Medtronic, Inc., Implantable Defibrillator Prod. Liab. Litig.*, which denied the continued involvement of Milberg Weiss and one of its partners on the Plaintiffs' Steering Committee, "[a]mongst many highly competent lawyers, . . . few would select an indicted, as opposed to an unindicted, law firm." 434 F. Supp. 2d 729, 732 (D. Minn. 2006). Indeed, allowing Milberg LLP – which a grand jury has found probable cause to believe committed illegal conduct – to continue in any capacity in this case could jeopardize the entire litigation if, for instance, absent class members choose to contest the adequacy of their representation or the firm is eventually convicted. The Wedgewood Group's apparent disregard for these concerns renders them inadequate to represent the Class. *See Sofran*, 220 F.R.D. at 403 (noting that a plaintiff's adequacy is contingent on the retention of counsel that is "qualified, experienced, and generally able to conduct the proposed litigation.") (citation omitted).

## V.  CONCLUSION

For the foregoing reasons, the Movant respectfully requests that the Court: (1) consolidate the related actions; (2) grant his motion for appointment as Lead Plaintiff; and (3) approve his choice of Zwerling, Schachter as Lead Counsel for the putative class.

Dated:  June 16, 2008

>Respectfully submitted,
>
>**ZWERLING, SCHACHTER
>  & ZWERLING, LLP**
>
>By:   /s/ Richard A. Speirs
>     Richard A. Speirs (RS 8872)
>     Paul Kleidman (PK 5209)
>     41 Madison Avenue, 32nd Floor
>     New York, NY 10010
>     Tel:  (212) 223-3900
>     Fax:  (212) 371-5969
>     rspeirs@zsz.com
>     pkleidman@zsz.com
>
>     *Proposed Lead Counsel for Lead Plaintiff
>     Movant Dr. Michael A. Passidomo
>     and the Class*
>
>     CRIDEN & LOVE, P.A.
>     Michael E. Criden
>     7301 S.W. 57th Court, Suite 515
>     South Miami, FL 33143
>     Tel.:  (305) 357-9000
>     Fax:  (305) 357-9050
>     mcriden@cridenlove.com